**OKLAHOMA OPERATING COMPANY, a Corporation, Plaintiff In Error,**

**v.**

**STATE DRY CLEANERS BOARD OF OKLAHOMA, Defendant In Error.**

No. 37329.

Supreme Court of Oklahoma.

Jan. 15, 1957.

Hubert Gibson, Oklahoma City, for plaintiff in error.

Orel Busby, Ada, Mac Q. Williamson, Atty. Gen., Fred Hansen, First Asst. Atty. Gen., for defendant in error.

JACKSON, Justice.

Certain individuals doing business under trade names engaged in the cleaning, pressing and dyeing service in Oklahoma County, Oklahoma, filed their application with the State Dry Cleaners' Board of Oklahoma, created under Title 59 O.S.1951 § 741 et seq., requesting a hearing and approval of a price agreement refixing minimum prices affecting their industry. Pursuant to the requirements of the statute notice of the application and the date of hearing thereof was published by the Board. Also, notices of the application and date of hearing were mailed to all persons engaged in the industry other than those appearing upon the application. The applicants, the Oklahoma Cleaners Association, and the Oklahoma Operating Company appeared by counsel at the hearing before the Board. A number of witnesses testified in support of the application and upon such proof, supplemented by documentary evidence, the Board entered its order refixing minimum prices for cleaning, pressing and dyeing applicable to the industry in Oklahoma County, insofar as said minimum prices fixed a differential for pick-up and delivery service from that fixed for a cash and carry service.

The Oklahoma Operating Company appealed from the order of the Board by lodging a transcript of the proceedings in the District Court of Oklahoma County as authorized by statute, Title 59 O.S.1951 § 759. They allege in their petition as follows:

"That said Order is unreasonable in that it fixes arbitrary, unreasonable and discriminatory price differentials between cash and carry and pick up and delivery service.

"That said Order is unreasonable and unfair to the public and is not necessary to promote the public welfare, health and safety, and is an unwarranted interference with individual liberty.

"That said Order is unlawful in that defendant has attempted to fix prices for delivery services without statutory authority to do so and in violation of the due process clause of the Constitution of the State of Oklahoma."

The Board, in addition to its general denial, filed an answer in which it alleged:

"Defendant specifically denies that said order is unreasonable, or unfair to the public, or fixes arbitrary, unreasonable or discriminatory price differentials between cash-and-carry and pickup-and-delivery services, or is not necessary to promote the public welfare, health, or safety, or is an unwarranted interference with individual liberty.

"Defendant specifically denies that said order was made without statutory authority therefor, or that the same is in violation of the due process clause of the Constitution of the State of Oklahoma.

"Defendant specifically alleges that said order and the prices fixed therein are necessary to stabilize the industry, and are reasonable and will promote the public welfare, health and safety."

Thereafter the parties entered into a stipulation submitting the case to the court, without the intervention of a jury, upon the transcript of the evidence taken at the hearing before the Board. The trial court entered its judgment on the 17th day of February, 1956, holding that the State Dry Cleaners' Board of Oklahoma was authorized under pertinent statute, to enter its order fixing a higher minimum price for

pick-up and delivery service than for a cash and carry service, as affecting those engaged in the cleaning, pressing and dyeing industry in Oklahoma County, Oklahoma, and specifically found that the order of the Board was not unreasonable or unlawful and that the plaintiff's prayer to vacate the order was denied.

▇ In the case of Jack Lincoln Shops, Inc., v. State Dry Cleaners' Board, 192 Okl. 251, 135 P.2d 332, we held that Title 59 O.S.1941 §§ 741–756 regulating the business of cleaners, pressers and dyers is constitutional and not violative of Sec. 7, Art. 2, of the Oklahoma Constitution. See, also, State Dry Cleaners' Board v. Compton, 201 Okl. 284, 205 P.2d 286.

Plaintiff does not challenge the Board's authority to establish minimum prices under Sec. 757 of Title 59, but limits its objection upon the ground that the Board arbitrarily fixed a 10¢ differential between the pick-up and delivery and the cash and carry service, and that the differential so established is not justified by the difference in cost of the two services, and results in a discrimination against the pick-up and delivery service, and in favor of the cash and carry service.

That contention must be resolved by an examination of the facts upon which the order was established. The minimum prices established by the order are indicated in a schedule consisting of approximately one hundred and forty articles of wearing apparel. As the minimum price applicable to the articles vary, we assume that the 10¢ differential is based upon the general average of prices thus indicated by the schedule.

An examination of the record discloses testimony of a witness that the pick-up and delivery service should be established as applied to his plant to meet the convenience of customers depending upon the public transport system, and that the 10¢ differential will not pay the costs attributable to a pick-up and delivery service.

Another witness testified that it appears obvious that the costs of a pick-up and delivery truck, costing approximately $3,-000, and the cost of carrying public liability and other insurance, together with the salary of the delivery man, would entail a substantial cost increase. Other witnesses who have operated a cash and carry business and also a pick-up and delivery business, testified that a cost differential of 10¢ to 20¢ should be established to meet the added cost of the delivery service.

The Oklahoma Operating Company, before the Board and at the trial and upon this appeal, contends that the proof submitted by the applicants does not justify the order establishing a difference in costs of the two services. In support of that contention it produced a survey made by it in the month of June, previous to the hearing, based upon the costs of its operation, which survey disclosed that its costs for its eleven stores was 26.73% for each dollar collected to maintain each cash and carry store and 28.27% to conduct pick-up and delivery service. Upon this survey plaintiff contends that the Board was not warranted in establishing a differential for a pick-up and delivery service in excess of 1.54%. It will be observed that plaintiff's figure of 26.73% is based upon its operation cost as applied to its eleven stores.

The Board's order is not based upon the differential in costs as applied to a plant maintaining one or more pick-up stations, and a cash and carry service, but is based upon the difference in cost between a pick-up and delivery service, over a cash and carry service. As so applied it will be seen that plaintiff's figure of 28.27% as a reasonable cost of a pick-up and delivery service is greater than the differential established by the Board.

The record discloses that at the time of the hearing the Oklahoma County Cleaners' Association had seventy-eight plant members operating in Oklahoma County, and in view of the fact that 75% of the duly registered and licensed cleaning and pressing operators must join in an application for the establishment of minimum prices indicates the applicants were not in

accord with the Operating Company's view on cost allocation.

The industry generally operates under three plans, and for the sake of argument it may be assumed that the price differential does not fall with an equal incidence on each of the seventy-eight plant operators in the industry.

In Class 1, we find that the operator's plant is usually established in a favorable location, drawing its business from local residents having ready access to his plant and place of business. This operator does an exclusive cash and carry business and is content with his competitive situation in the industry and, therefore, the differential price would not affect his competitive situation.

In Class 2, the operators conduct their business generally upon a cash and carry plan. However, because of their plant locations not being as favorably situated as the operator of Class 1, they establish one or more offices called "pick-up stations", including an investment in a delivery truck which entails additional costs in their operations. Therefore, they advocate the establishment of the differential price structure.

Class 3 covers operators engaged both in the laundry and dry cleaning business. These operators, though not opposing the application of the differentials in principle, contend that the margin established by the Board is too wide.

The original Cleaners and Dyers Act, 59 O.S.1941 § 741 et seq., contained no minimum price provision. The Act now under consideration, which contains the minimum price feature, was added to insure compliance with certain standards of operation as set forth in the Act. These standards in the wisdom of the Legislature were deemed necessary for the safety, health and general welfare of the people and, as we have indicated, have been judicially approved as within the limitations of the police power of the state. Upon that hypothesis the legislation was sustained upon constitutional grounds.

Finding that the order is based upon due process and supported by substantial evidence, we affirm the judgment of the trial court approving the order of the Board.

Affirmed.